UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

---

LEE BAYLESS, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

BLUE RIDGE CARGO, INC. and FEDERAL EXPRESS CORPORATION,

    Defendant.

CASE NO.  3:25-cv-47-JHY-JCH

---

**MEMORANDUM IN SUPPORT OF
JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT
AND DISMISSAL WITH PREJUDICE**

---

Plaintiff Lee Bayless ("Plaintiff") and Defendants Blue Ridge Cargo, Inc. and Federal Express Corporation (collectively, the "Parties"), jointly file this Memorandum in Support of their Joint Motion for Approval of FLSA Settlement Agreement and Dismissal With Prejudice ("Motion") asking that the Court (1) approve the Parties' FLSA Settlement Agreement, filed as Exhibit 1 to this Motion, and (2) dismiss the case with prejudice.

The parties reached the FLSA Settlement through a settlement conference with Magistrate Judge Joel Hoppe on December 11, 2025. The FLSA Settlement satisfies all criteria for approval of a Fair Labor Standards Act ("FLSA") settlement because it is a fair and reasonable resolution of a bona fide dispute and is the result of arm's-length settlement negotiations conducted by counsel well-versed in wage and hour law, and overseen by Judge Hoppe. In support of this Motion, the Parties respectfully state as follows:

31179\0001\13104223v1

## PROCEDURAL BACKGROUND AND SETTLEMENT NEGOTIATIONS

### I.     Factual Allegations

Plaintiff Bayless brought this action against Defendants, his alleged former employers, alleging claims for unpaid overtime in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq., ("FLSA"), the Virginia Overtime Wage Act, Va. Code § 40.1-29.2 ("VOWA"), and the Virginia Wage Payment Act, Va. Code § 40.1-29 ("VWPA"). Plaintiff brought the case as a putative hybrid collective and class action. The case resolved as a single plaintiff settlement prior to filing of a motion for class action certification. Accordingly, this brief addresses Plaintiff's claims in an individual capacity.

Plaintiff alleged that he and others were non-exempt delivery drivers paid by Defendant Blue Ridge Cargo, Inc.("BRC") to deliver packages for Defendant FedEx ("Drivers"). (See DN 1 ¶¶ 7, 9; 22-35.) Plaintiff asserted that Defendants were his employers or joint employers. (See Id. ¶¶ 36-61.) Plaintiff further asserted that due to alleged policies and practices of Defendants, he was not compensated for all hours he worked for Defendants. (See Id. 62-91.) This included time spent at the FedEx terminal in Staunton loading his truck before 8:30am.

Defendants denied, and continue to deny, all allegations of violations of law or other wrongdoing, and further deny that FedEx was a joint employer of Plaintiff or any other BRC personnel.

### II.    Overview of Investigation, Litigation, and Settlement Negotiations

Plaintiff initiated this action on June 11, 2025 by filing a Complaint against Defendants alleging the claims discussed above. (DN 1.) Prior to filing, Plaintiff's counsel conducted an extensive investigation into the merits of the potential claims and defenses. Plaintiff's counsel focused the investigation and legal research on the underlying merits of the claims, Defendants'

2

31179\0001\13104223v1

anticipated defenses, and the damages to which Plaintiff may be entitled if he were to prevail. Plaintiff's counsel obtained and reviewed documents from the Plaintiff, including pay records, researched Defendants' operations, and conducted legal research into the potential claims and defenses. Plaintiff's counsel also conducted in-depth interviews with Plaintiff.

Subsequently, the Parties began to explore the possibility of early resolution. This is included an agreement to stay the matter pending a settlement conference with Judge Hoppe. (See DN 27 and 36.) To facilitate the settlement discussion, the Parties negotiated a protective order (DN 31) and entered into a mediation and production agreement that provided for the production of detailed BRC time and pay data necessary for Plaintiff's preparation of a damages model. When Plaintiff also demanded Hours of Service (HOS) records maintained by FedEx pursuant to federal regulation,, the Parties were able to resolve the dispute through an informal process assisted by Judge Hoppe. Using BRC wage and hour records together with Hours of Service data provided by FedEx,, Plaintiff prepared detailed damages calculations, which were shared with Defendants in preparation for the settlement conference.

Due to the disputed issues in the case regarding alleged uncompensated working time, and purported discrepancies between BRC wage and hour records and FedEx Hours of Service data, Plaintiff's damages model used a combination of BRC and FedEx records to calculate the allegedly uncompensated working hours. Plaintiff provided the damages model to Defendants, the Parties engaged in several conferences to address issues in the case and with damages modeling, and the Parties disputed which if any hours captured by Plaintiff's damages model constituted compensable working time under the FLSA and state law.

The Parties disputed the central issues of , (1) whether Defendants paid Plaintiff for all hours worked, (2) the amount, if any, of uncompensated "work" time within the meaning of the

FLSA and state law, (3) whether Defendants engaged in good faith efforts to comply with the FLSA, (4) whether any violation of the overtime requirements by Defendants was willful, (5) the proper measure of compensable time, overtime worked and calculations of damages, if any; and (6) whether FedEx was an "employer" of Plaintiff within the meaning of wage and hour laws.

On December 11, 2025, the Parties participated in the settlement conference with Judge Hoppe. The settlement conference lasted the full day and resulted in settlement of all claims and issues between Plaintiff and Defendants in this case.[1] The settlement conference culminated in a Memorandum of Understanding between the Parties. The settlement resolved only Plaintiff's individual claims, rather than classwide claims, in part based on representations by Defendant Blue Ridge Cargo about its finances and ability to fund a settlement. The Parties subsequently negotiated the terms of the formal settlement agreement ("Settlement") that is before the Court for approval.

## SUMMARY OF THE KEY SETTLEMENT TERMS

**The FLSA Settlement Amount(s)**

Defendant Blue Ridge Cargo has agreed to pay a total of $47,500 to settle Plaintiff's wage and hour claims in this action. That amount will be allocated as follows: (i) a settlement payment to Plaintiff of $23,750, allocated equally between alleged wage loss and alleged non-wage / liquidated damages, and (ii) payment to Plaintiff's counsel of $23,750 for attorney fees and costs.

**Wage and Hour Release**

Under the Settlement, the Parties have agreed to a release that is tailored to only release Plaintiff's wage and hour claims.

---

[1] The settlement does not release the claims at issue in a pending related case brought by Plaintiff Bayless against FedEx and a different "last mile" delivery company, BRX, Inc., 3:25-cv-00077-JHY-JCH (WD Va.). That case is moving forward currently.

4

**Denial of Liability**

The Settlement acknowledges that the Defendants deny liability in any way to Plaintiff and that the resolution of this matter should in no way be construed as an admission of liability.

## ARGUMENT

**I.    The Settlement Meets the Requirement for Approval of an FLSA Settlement.**

Settlement of an FLSA overtime lawsuit must be approved by the U.S. Department of Labor or a federal district court. *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016) (citing *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005)). Courts in the Western and Eastern District of Virginia have traditionally taken their direction from the Eleventh Circuit and have held that an FLSA settlement should be approved if it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Patel v. Barot*, 15 F. Supp. 3d 648, 654 (E.D. Va. 2014) (citing *Lynn Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982)). Furthermore, when the parties' settlement, as here, reflects "a reasonable compromise over the issues the court may approve it in order to promote the policy of encouraging settlement of litigation." *Kuntze v. Josh Enters., Inc.*, No. 2:18cv38, 2019 WL 2179220, at *1 (E.D. Va. May 20, 2019) (internal markings omitted) (citing *Lynn Food Stores*, 679 F.2d at 1354).

This Settlement represents a good faith compromise of the Parties' bona fide dispute of liability and damages under the FLSA. Furthermore, the proposed settlement terms are fair and reasonable, and the settlement was reached after arms-length negotiation presided over by Judge Hoppe. For these reasons and based on the foregoing, the Parties request that the Court approve the Settlement.

    **A.    There is a Bona Fide Dispute over FLSA Provisions.**

31179\0001\13104223v1

To merit court approval, the settlement must revolve a bona fide dispute over FLSA provisions.  *See Patel*, 15 F. Supp. 3d at 654 (citing *Lynn Food Stores*, 679 F.2d at 1355).  In this action, Plaintiff alleges he was not compensated for all time he worked for Defendants within the meaning of the FLSA and state law, and therefore that Defendants did not pay him overtime wages in violation of the FLSA. As the Court has noted, "[a] bona fide dispute exists when an employee makes a claim that he or she is entitled to overtime payment."  *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1.08cv1310, 2009 WL 3094955, at *16 (E.D. Va. Sept. 28, 2009).

Defendants have at all times denied liability, denied that FedEx was an employer of Plaintiff, denied that they owed Plaintiff any wages, and had the case proceeded to trial would have asserted that (1) Plaintiff was properly paid for all hours worked, (2) Defendants engaged in good faith efforts to comply with the FLSA, barring recovery of liquidated damages under the FLSA, (3) even if there was a violation of the overtime rules by Defendants, no such violation was willful, limiting Plaintiff to only two years of overtime wages, (4) Plaintiff worked far fewer hours than he claimed, and (5) even if Plaintiff prevailed on some aspects of his overtime claim, his recoverable unpaid overtime pay under the FLSA was far less than the estimates as calculated below.

In light of the Parties' opposing positions, multiple factual and legal disputes exist, including:   (1) whether Plaintiff was paid for all hours worked, (2) whether Defendants engaged in good faith efforts to comply with the FLSA, (3) whether any violation of the overtime rules by Defendants was willful, (4) how many overtime hours Plaintiff worked, and (5) the proper measure of overtime damages calculations, if any, and (6) whether FedEx was potentially liable an a joint employer of PlaintiffTherefore, a *bona fide* dispute exists between the Parties.

The existence of a *bona fide* dispute is further supported by the fact that, under the FLSA Settlement Agreement, Defendants expressly deny any liability to Plaintiff. The Settlement Agreement resolves these contested issues. As such, this settlement represents a good faith compromise of the Parties' bona fide dispute regarding the FLSA claims alleged in the Complaint.

### B.     The Settlement is Fair and Reasonable.

"In determining whether a settlement is fair, adequate, and reasonable there is a *strong presumption* in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed." *LaFleur*, 189 F. Supp. 3d at 593 (emphasis added) (internal markings and citations omitted). Those factors to be considered when assessing whether an agreement is fair and reasonable are: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of the counsel who have represented the plaintiff; (5) the probability of plaintiff's success on the merits; and (6) the amount of the settlement in relation to the potential recovery. *Id.*; *see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975).

While these six factors are "more applicable to a collective action under FLSA than an action involving a single plaintiff," courts have applied them to guide the analysis for fairness in single-plaintiff settlements. *Rosa v. Gulfcoast Wireless, Inc.*, Civ. No. 18-4577, 2018 WL 6326445, at *2 (E.D. La. Dec. 3, 2018); *see also Stephens v. Take Paws Rescue*, No. 21-cv-1603, 2022 WL 2132286, at *2 (E.D. La. June 14, 2022).

When considering these factors, courts must also keep in mind that:

> [a] compromise is the essence of a settlement and the trial court should not make a proponent of a proposed settlement justify each term of a settlement agreement against a hypothetical or speculative measure of what concessions might have been gained since inherent

7

> in compromise is a yielding of absolutes and abandoning of highest
> hopes.

*Gholston v. Smithfield Foods, Inc.*, No. 2:22-cv-194, 2022 WL 21842305, at *2 (E.D. Va. Nov. 2, 2022) (Smith, J.) (quoting *Lomascolo*, 2009 WL 3094955, at *10). Moreover, "there is an overriding public interest in favor of settlement." *Id.* Therefore, "[t]here is a 'strong presumption in favor of finding a settlement fair.'" *Id.*

Here, all six factors support approval of the Settlement Agreement. The case settled after extensive informal discovery that allowed the Parties to develop and assess their respective positions. Plaintiff's and Defendants' counsel have extensive experience litigating FLSA claims, and there is no fraud or collusion. Cases asserting wage-and-hour claims on an individual or collective basis are expensive and time-consuming for all parties involved, and consequently, the expense and likely duration of continued litigation (absent settlement) favor approval. The Parties exchanged relevant data and information, engaged in legal research, and analyzed data and evidence to assess potential damages before negotiating the settlement in good faith. The Parties were fully informed of the issues pertaining to Plaintiff's claims, Defendants' defenses, and the Parties recognize that the outcome of continued litigation would be uncertain and the risks of continued litigation would be high. In these circumstances, the Parties and their respective counsel support the settlement and request this Court's approval.

### 1. The Extent of Discovery that has Taken Place.

The Parties engaged in extensive exchange of the BRC wage and hour records and DOT Hours of Service data data critical to valuing and resolving the case. The information exchanged helped support their respective positions regarding the underlying facts, claims, defenses, and contentions herein. As a result, the Parties had all the information that they needed to evaluate the damages at issue and to determine whether settlement made legal and/or business sense. Plaintiff

used the detailed data obtained to prepare a thorough damages model. Additional discovery certainly could have been sought prior to settlement, such as deposition testimony, but it likely would not have changed the alleged damages calculations and would only have caused the Parties to incur more costs. The extent of discovery thus weighs in favor of approval.

### 2. The Stage of the Proceedings.

Because this lawsuit involves allegations of unpaid but allegedly compensable work time, and unpaid overtime wages under the FLSA, as well as allegations of joint employment, several important issues would have required significant litigation had the matter not settled. These issues include Plaintiff's claimed hours of work, given that Blue Ridge Cargo asserted that it paid him for all hours worked, and Plaintiff's contrary assertion that FedEx data reflected work time for which he was not paid; Defendants' affirmative defenses including the "good faith" defense to liquidated damages; and debate over whether any violations were inadvertent or willful; and developing and arguing proof and defenses with respect to Plaintiff's assertion that FedEx was a joint employer liable for any wage and hour violations, and contrasting assertions that FedEx did not satisfy the test for a joint employer under the FLSA. None of this is to mention the time and energy that would have gone into dispositive briefing on numerous summary judgment and/or trial issues related to the joint employment, compensable work time disputes, damages, and related issues.

If the litigation had progressed, it would have been complex, expensive, and protracted. This settlement provides meaningful recovery to Plaintiff and avoids the risk of loss and zero recovery. From Defendants' perspective settlement eliminates further exposure to fees and litigation costs.

The proceedings thus far have enabled "the Parties and their counsel to obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to the trial of this case." *Lomascolo*, 2009 WL 3094955, at *11. Should this matter proceed to trial, a jury would have to resolve multiple questions concerning the application of the FLSA to the facts of this case. Therefore, these circumstances weigh in favor of approving the settlement. *Gholston*, 2022 WL 21842305, at *4.

### 3. The Absence of Fraud or Collusion.

"There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Lomascolo*, 2009 WL 3094955, at *12; *see also Kuntze*, 2019 WL 2179220, at *2. The Parties prepared for and negotiated this settlement at arms-length over a period of weeks, through formal discovery and exchange of critical data, culminating in the resolution reached through the settlement conference with Judge Hoppe. Thus, there is no evidence to outweigh the presumption that no collusion occurred between counsel.

### 4. The Experience of Plaintiff's Counsel.

When counsel has "experience in federal court and employment litigation . . . their opinion is entitled to weight." *Gagliastre v. Captain George's Seafood Rest., LP*, No. 2:17cv379, 2019 WL 2288441, at *3 (E.D. Va. May 29, 2019); *see also Flinn*, 528 F.2d at 1173 ("While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement."). Plaintiff's counsel has a breadth of experience in the fields of employment litigation and wage and hour law. Plaintiff's counsel has litigated and/or is litigating a number of small and large wage and hours cases in Virginia federal courts, including, but not limited to:

- *Campbell, et al. v. Capital Center, LLC*, 3:20-cv-00694 (E.D. Va.)
- *Clark v. Goodwill of Central and Coastal VA. Inc*., 3:19-cv-00152-HEH (E.D. Va.)
- *Goode v. Better Homes Coalition*, 3:20-cv-00116 (E.D. Va.)
- *Kotsifas v. Woodlake Community Association, Inc,* 3:20-cv-00179-DJN (E.D. Va.)
- *Matthews, et al. v. Commercial Condominium Mgmt. Co*., 1:22-cv-00297-AJT (E.D. Va.)
- *Bendolph v. DLH Holdings Corporation, et al*., 1:22-cv-00401-TSE (E.D. Va.)
- *Petrea v. Midnight Express Auto Recovery, Inc*., 3:22-cv-00415-JAG (E.D. Va.)
- *Azpeitia v. Employment Advocates Group*, 1:23-cv-01742-DJN (E.D. Va.)
- *Campbell, et al. v. Intercontinental Capital Group, Inc*., 3:22-cv-00034 (E.D. Va.)
- *Ali v. Ghulam, et al.,* 1:22-cv-00799-PTG (E.D. Va.)
- *Petrea v. Midnight Express Auto Recovery, Inc*., 3:22-cv-00415-JAG (E.D. Va.)
- *Jama v. Antra, Inc.* 1:23-cv-00997-LMB-LRV (E.D. Va.)
- *Bedra et al v. Oak Grove Technologies, LLC,* 1:24-cv-00617-WBP (E.D. Va.)
- *Rizuto v. Millennium Power Services, Inc*., 3:24-cv-00510-SLS (E.D. Va.)
- *Torres et al v. Manganaro Midatlantic, LLC*, 3:24-cv-00343-RCY (E.D. Va.)
- *Ward v. Callahan Learning Center LLC*, 3:25-cv-00206-HEH (E.D. Va.)
- *Magnanelli v. Smart Roof LLC*, 1:25-cv-00519-RDA (E.D. Va.)
- *Guerrero, et al. v. Max's Services USA LLC*, 3:25-cv-00806-REP (E.D. Va.)
- *Roque v. Healthy Avenues Medical Group LLC*, 4:25-cv-00167-EWH-DEM (E.D. Va.)
- *Payne v. Echohill Enterprises*, 5:19-cv-00059 (W.D. Va.)
- *Riggs v. Barns at Woodbourne*, 3:19-cv-00064 (W.D. Va.)
- *Wheaton v. Westminister-Canterbury of The Blue Ridge*, 3:22-cv-00050 (W.D. Va.)
- *Mendoza, et al. v. Baird Drywall & Acoustic, Inc., et al.*, 7:19-cv-882 (W.D. Va.)
- *Britt v. Baird Drywall & Acoustic, Inc*., 7:21-cv-00365-EKD
- *Denton v. Westminster Child Care Center*, 3:21-cv-00026-NKM-JCH (W.D. Va.)
- *Gutierrez v. Baird Drywall & Acoustic, Inc.,* 7:22-cv-00604-EKD (W.D. Va.)
- *Lambie v. Entegee, Inc., et al*., 1:22-cv-00030-JPJ (W.D. Va.)
- *Wheaton v. Westminster Canterbury of the Blue Ridge*, 3:22-cv-00050-NKM (W.D. Va.)
- *Gutierrez v. Baird Drywall & Acoustic, Inc.,* 7:22-cv-00604-EKD (W.D. Va.)
- *Winrow, et al v. Hill Valley Healthcare, LLC et al*, 3:24-cv-00029-RSB-JCH (W.D. Va.)
- *Witcher v. Performance Livestock & Feed Company, LLC et al*, 4:24-cv-00028-TTC-CKM (W.D. Va.)
- *Crantz v. Rosewood Village Associates LLC*, 3:25-cv-00039-JHY-JCH (W.D. Va.)

11

Plaintiff's counsel relied on a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the settlement. Based on Plaintiff's counsel's knowledge of the case and applicable law, as well as experience in numerous similar wage and hour actions, Plaintiff's counsel's opinion is that the settlement is fair, reasonable, and adequate and resolves a bona fide dispute. That opinion, based on extensive knowledge of employment law, is entitled to significant weight. Given this record of Plaintiff's counsel's credentials and experience, the "attorney experience" factor also weighs in favor of finding the settlement fair and reasonable. *Gholston*, 2022 WL 21842305, at *5.

### 5. The Probability of Plaintiff's Success on the Merits.

The probability of Plaintiff's success on the merits likewise supports approval. The settlement reflects the fact that Defendants would have vigorously contested the merits of Plaintiff's claims, including their contention that he was properly paid for all time worked with no right to additional pay. When evidence presented indicates that a plaintiff has "significant hurdles to overcome to affect any recovery under the FLSA," this factor "weighs heavily in favor of finding the settlement fair." *Patel*, 15 F. Supp. 3d at 656. As stated above, recovery in this matter is not guaranteed. Plaintiff faced considerable disputes regarding whether he was properly paid for all hours worked (in which case he would be entitled to no damages); regarding hours worked and whether and the extent to which he worked compensable overtime hours that were not paid; regarding the compensability of certain types of activities, and regarding liquidated damages and willfulness, among other issues.

Defendants contend that the shorter two-year statute of limitations under the FLSA would have been appropriate because any alleged violation was not willful, which would also significantly limit the possible recovery in this case. Therefore, it is possible that at summary

12

judgment or trial Plaintiff would not have satisfied his burden of proving a violation of the FLSA, or that his FLSA overtime damages if successful would be significantly lower than his "best day in court" calculation or the amount provided by this settlement. These risks are relevant in the assessment of a settlement's fairness and reasonableness.

Further, were Plaintiff to succeed on his FLSA claim, he would have sought liquidated damages under the FLSA in an amount equal to the alleged unpaid overtime. Defendants would contend that it acted in good faith and that liquidated damages were not appropriate. *See* 29 U.S.C. § 260 (providing the employer with a safe harbor to avoid liquidated damages where actions were undertaken "in good faith"). Given the disputed issues, a settlement that provides Plaintiff the certainty of an immediate recovery with respect to his alleged unpaid overtime is a fair and reasonable compromise of Plaintiff's claims.

Because Plaintiff faced significant hurdles with respect to his FLSA claims, the probability of success on the merits factor weighs in favor of approval.

### 6. The Amount of the Settlement in Relation to the Potential Recovery.

The range of possible recovery also favors approval. There is substantial uncertainty under the FLSA and Virginia law regarding the range of recovery for an overtime and wage claim and the duration for possible recovery. Here, even after fees, under the Settlement, Plaintiff stands to recover $23,750. Plaintiff believes that this amount is in the upper range of possible recovery whereas Defendants calculate a different range of possible recoveries. These range of recoveries were shared with Judge Hoppe who was instrumental in assisting the Parties in reaching a fair and reasonable settlement of the FLSA overtime claim. Critically in dispute for the Parties was the duration of possible recovery and the issue of alleged unpaid work time which was not documented in Blue Ridge Cargo's records.

If he prevailed on all issues in the case, including the number of allegedly compensable unpaid work time, and all hours were counted as overtime hours, Plaintiff calculates potential unpaid overtime at issue was approximately $ 20,283.13 over three years, plus liquidated damages, if Plaintiff prevailed on Defendants' "good faith" defense.  By contrast, Defendants contend that Plaintiff is entitled to no overtime or damages whatsoever. If Defendants had prevailed, Plaintiff would have recovered nothing. Further, if Plaintiff had prevailed on some but less than all issues, he could have recovered less than the amount provided by the Settlement.

Even after fees, under the Settlement Plaintiff stands to recover $23,750.  Plaintiff further enjoys the benefit of settlement far sooner than if this matter was to go to trial. Additionally, Plaintiff also avoids any of the negative outcomes he might have faced through litigation, i.e., the possibility of zero recovery should he lose at summary judgment, loss at trial, or loss on appeal. Consequently, this settlement brings considerable value and certainty now, as opposed to months or years from now.  The substantial benefit to the Plaintiff is a significant factor weighing in favor of approval of the proposed FLSA Settlement Agreement.

    **C.**    **Plaintiff's Attorneys' Fees and Costs.**

Under the FLSA Settlement, in addition to the recovery to Plaintiff, the Parties have allocated $23,750 to Plaintiff's attorney's fees. The amount is a significant discount compared to counsel's lodestar described below. The FLSA provides in part that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by defendant, and costs of the action." 29 U.S.C. § 216(b).  The FLSA Settlement agreed to by the Parties reflects this and rather than engaging in a time consuming and costly fight over the amount of attorneys' fees, the Parties here were able to reach a resolution of the claim for attorneys' fees and costs.

31179\0001\13104223v1

The FLSA " 'requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interests taints the amount the wronged employee recovers under a settlement agreement.' " *Poulin v. General Dynamics Shared Res., Inc.*, No. 3:09-cv-00058, 2010 WL 1813497, at *2 (W.D. Va. May 5, 2010) (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)); *see also Davis v. BT Ams. Inc.*, No. 2:16cv206, 2017 WL 11506967, at *2-3 (E.D. Va. May 10, 2017). When assessing the fairness of attorneys' fees pursuant to a court-ordered fee award, courts generally rely on the lodestar analysis. *See Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992). "The lodestar fee is calculated by multiplying the number of reasonable hours expended times a reasonable rate." *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016) (citing *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998).

However, "[a]ssessing the fairness of attorney's fees under an FLSA settlement negotiated at arm's length is not identical to determining their reasonableness using the familiar lodestar method." *Devine v. City of Hampton*, No. 4:14cv81, 2015 WL 10793424, at *3 (E.D. Va. Dec. 1, 2015). In determining the reasonableness of attorneys' fees in an FLSA settlement, courts should give some deference to the parties' voluntary agreement and use lodestar principals as a cross-check to assess fairness. *Id*. ("Although the parties' voluntary agreement is due some deference, courts in this Circuit generally examine the lodestar principals "as a guide" or "cross check" to assessing the fairness of the negotiated sum.") (citing *Poulin*, 2010 1813497, at *1).

The following twelve factors, first stated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), guide a district court's discretion in determining what constitutes a "reasonable" number of hours and rate:

    1) the time and labor expended;
    2) the novelty and difficulty of the questions raised;

15

3) the skill required to properly perform the legal services rendered;
4) the attorney's opportunity costs in pressing the instant litigation;
5) the customary fee for like work;
6) the attorney's expectations at the outset of the litigation;
7) the time limitations imposed by the client or circumstances;
8) the amount in controversy and the results obtained;
9) the experience, reputation and ability of the attorney;
10) the undesirability of the case within the legal community in which the suit arose;
11) the nature and length of the professional relationship between attorney and client; and
12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009) (spaces added) (quoting *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). A court need not consider all twelve *Johnson* factors, only those relevant to the particular litigation. *See LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 595 (E.D. Va. 2016) (Jackson, J.).

Plaintiff's counsel has expended a significant amount of time and labor on this litigation and the preparation that preceded it, estimated at approximately 116.85 hours as of January 13, 2026 (including approximately 110.92 hours attorney time), at $510 - 525 per hour for attorney time (Coffield) and $225 per hour for law clerk time (Garrity), for an estimated lodestar of $58,896.52 plus $405 in costs.[2] Additional time will be needed through the settlement approval process, such as any settlement hearing.

This case raises difficult questions of interpreting and applying the requirements of the FLSA's working time regulations and joint employment factors; difficult proof and arguments regarding the alleged "willfulness" of Defendants' conduct with respect to their pay practices, the

---

[2] Given the holistic nature of the Settlement for which the parties seek approval, Plaintiff's counsel does not ask the Court to opine on hourly rates. Plaintiff's current fee records or summary of same can be made available to the Court for *in camera* review should the Court wish to review them. Plaintiff can likewise submit declarations regarding rates and experience if the Court requires.

viability of Defendants' "good faith" defense to liquidated damages; and preparing a damages model that consolidated multiple data sources.

Litigating these issues requires adequate skill, as the case involved the above challenging issues as well as complex damages calculations, willfulness issues, and the good faith defense. There was a significant opportunity cost in pursuing this litigation, as Plaintiff's counsel routinely has to pass on other potential cases to pursue current cases, including this one, and this was a contingency fee case with a risk of loss and receiving no fees. Plaintiff's counsel's hourly rate during this matter has ranged from $510 - $525 (through December 31, 2025). Given the holistic nature of the FLSA Settlement for which the Parties seek approval, Plaintiff's counsel does not ask the Court to opine on hourly rates. Plaintiff's counsel's experience is discussed above; counsel's expectations at the outset were that the case would be a *bona fide* dispute on numerous complex issues, and it was.

The case involved typical time commitments with respect to the overtime claims as it entailed preparing, researching, conducting informal discovery, preparing a complex damages model the consolidates and compares different data sources, and negotiating settlement terms. The amount in controversy and results obtained are discussed above, with Plaintiff receiving an amount under the Settlement that exceeds his alleged unpaid overtime wages. Plaintiff's counsel considers the "undesirability" of the case to be neutral: the case had merit, but involved complex wage and hour issues.

Plaintiff's counsel has a good relationship with Plaintiff, going back to the investigation that preceded the filing of this case. Counsel worked hard to keep Plaintiff informed and closely involved at each step of the litigation, communicating with Plaintiff on a regular basis.

17

31179\0001\13104223v1

The attorney's fees figure is well in line with, and in many cases less than, awarded attorneys' fees in cases alleging the non-payment of overtime under the FLSA. The negotiated fee represents a substantial discount compared to Plaintiff's counsel's hourly lodestar. Further, FLSA and other fee-shifting employment cases often involve fees that substantially exceed the Plaintiff's recovery, which is not the case here. "In FLSA cases, like other discrimination or civil rights cases, the attorneys' fees need not be proportional to the damages plaintiffs recover because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights." *Davis v. BT Ams. Inc.*, Case No. 2:16cv206, 2017 WL 11506967, at *6 (E.D. Va. May 10, 2017) (*quoting Spencer v. Cent. Servs., LLC*, Case No. CCB 10-03469, 2012 WL 142978, at *4 n.4 (D. Md. Jan. 13, 2012)). Courts within the Fourth Circuit have recognized that fees may "substantially exceed damages" in FLSA cases. *Atkins v. Sunbelt Rentals, Inc.,* Case No. 14-1717, 2016 WL 3647610, at *4 (D. Md. June 29, 2016). In approving fees of $95,400 on $30,000 of damages, *Atkins* cited a number of approved FLSA settlements where fees awarded were many multiples of the damages. *See Id*. at *4–5.

Further, Plaintiff's attorney's fees should be approved because they are part of the bargained-for settlement. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed.").

"[A]ny process of judicial review and approval of stipulated attorneys' fees in the event of a settlement of civil rights litigation is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775 (8th Cir. 2018) (reversing district court's reduction of attorney fees from the agreed-upon settlement amount in an FLSA action). Similarly, the attorney fees are reasonable in light of the fact that Plaintiff has agreed to the fee.

31179\0001\13104223v1

"In the Fourth Circuit, 'the most critical factor in calculating a reasonable fee award is the degree of success obtained.'" *Teague v. Bakker*, 213 F. Supp. 2d 571, 583 (W.D. N.C. 2002) (quoting *McKnight v. Cir. City Stores, Inc.*, 14 F. App'x 147, 149 (4th Cir. 2001)). Here, Plaintiff believes the settlement to be a significant success, the settlement is objectively a success for Plaintiff, and the Parties agreed to Plaintiff's attorney fees. Accordingly, the attorney fee is reasonable and should be approved.

## CONCLUSION

This settlement was reached after extensive written discovery through a settlement conference with Judge Hoppe. The Parties engaged in analysis of the facts and the data at issue and the FLSA Settlement Agreement provides the Plaintiff significant monetary relief on his claims. Because the settlement is a fair and reasonable resolution of a bona fide dispute between the Parties, it should be approved.


Respectfully Submitted,

/s/Timothy Coffield
Timothy Coffield (VA 83430)
Coffield PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
P: (434) 218-3133
F: (434) 321-1636
tc@coffieldlaw.com

/s/Paul G. Klockenbrink
Paul G. Klockenbrink (VA Bar No. 33032)
Harrison E. Richards (VA Bar No. 94960)
GENTRY LOCKE ATTORNEYS
SunTrust Plaza
10 Franklin Road S.E., Suite 900
Roanoke, VA 24011
Tel: (540) 983-9300
klockenbrink@gentrylocke.com

19

hrichards@gentrylocke.com

*Attorneys for Blue Ridge Cargo, Inc*

/s/Christopher M. Ahearn
Christopher M. Ahearn (*pro hac vice*)
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road, Building B, 3rd Floor,
Memphis, TN 83125
Tel: (901) 434-8404
christopher.ahearn@fedex.com

and

John C. Snyder
FEDERAL EXPRESS CORPORATION
1000 FedEx Drive
Moon Township, PA 15108
Tel: (412) 747-4248
john.c.snyder@fedex.com
and

Kim D. Mann (VA Bar No. 25672)
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY
4601 N. Fairfax Drive,
Suite 220
Arlington, VA 22203
Tel: (202) 551-9025
kmann@scopelitis.com

*Attorneys for Federal Express Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2026, a copy of the foregoing was electronically filed using the CM/ECF system, which provided electronic service to all counsel of record.

/s/Timothy Coffield
Counsel for Plaintiff

20

31179\0001\13104223v1